IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

STEFANIE JONES,

                          Plaintiff,                         OPINION & ORDER

        v.
                                                             13-cv-741-wmc
WEA INSURANCE CORPORATION,

                          Defendant.

        Plaintiff Stefanie Jones seeks to recover unpaid long-term disability ("LTD") benefits
under the terms of an employee benefits plan established by her former employer,
defendant WEA Insurance Corporation ("WEA").   Jones challenges as arbitrary and
capricious WEA's decision to deny her LTD benefits with respect to two particular time
periods: (1) August 6, 2009, through September 18, 2009; and (2) November 30, 2009,
through March 10, 2010.  WEA has moved for summary judgment.  (Dkt. #14.)  Under the
applicable deferential standard, the court agrees that WEA's decision to deny Jones benefits
was based on a substantial review and, at worst, conflicting evidence.  Her challenge,
therefore, is unavailing and so the court will grant the motion for summary judgment.


UNDISPUTED FACTS[1]

**A. Background**

        At all relevant times, WEA sponsored and maintained an employee benefits plan
("the Plan") for its eligible employees.   The Plan is governed by the Employment
Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* and arises

---

[1] Unless otherwise noted, the court finds the following facts, taken from the parties' submissions, to
be material and undisputed.

from a group insurance contract WEA issued to itself as employer.  WEA, as insurer, is the

Plan's Administrator for ERISA purposes.[2]

The principal duty of the Administrator is "to carry out the terms of the Plan for the

exclusive benefit of persons entitled to participate in the Plan."  Specifically-enumerated

administrative duties include interpreting the Plan, prescribing applicable procedures,

determining eligibility for an amount of benefits, authorizing benefit payments and

gathering information necessary for Plan administration.   The Administrator is also

explicitly granted discretionary authority to determine eligibility for benefits:

> The Plan Administrator has the authority to interpret the Plan
> in order to make eligibility and benefit determinations as it may
> determine in its sole discretion.  The Plan Administrator also has
> the discretionary authority to make factual determinations as to
> whether any individual is entitled to receive any benefits under
> the Plan.

(Vaughn Vance Decl. Ex. 1 (dkt. #17-1) ECF 10.)   By the terms of the Plan, the

Administrator's decisions with respect to benefits eligibility are subject to judicial review

under an arbitrary and capricious standard, with the record confined to evidence presented

to or considered by the Administrator at the time the challenged decision was made.

All regular WEA employees in secretarial and clerical positions, who are represented

by the United Staff Union and typically employed for at least 20 hours per week, are

eligible for LTD coverage under the Plan and the LTD Policy.  The LTD Policy defines

"Disabled and Disability" as "the inability of a Covered Employee to perform adequately

the material and substantial duties of his or her Regular Occupation due to his or her own

involuntary and medically proven and documented physical or mental impairments."

---

[2] This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

"Regular Occupation" means "the position held by the Covered Employee with the Employer on the Covered Employee's Date of Disability." "Date of Disability," in turn, is defined as "the date which the Company determines to be the first day on which the Covered employee was Disabled."

The LTD Policy also establishes criteria employees must meet to qualify for benefits. By its terms, to substantiate a claim for benefits, an employee must provide sufficient proof of a covered loss. The policy states that WEA "will require information from the Employer regarding your inability to perform the duties of your Regular Occupation and objective evidence confirming your Disability from a Physician licensed and qualified to diagnose the impairment(s) causing the claimed Disability, in addition to the information you provide yourself." (Administrative Record (dkt. #10) Ex. 18.)[3] The Policy also expressly advises that "[a] physician's declaration that you are Disabled, without accompanying objective medical and/or psychiatric evidence, is not sufficient to substantiate your Disability" and mandates that the employee is responsible for providing proof of loss entitling her to benefits. (*Id.*; Pl.'s PFOF (dkt. #15) ¶ 16.) It also gives WEA the right to require that claimants be examined by a health professional of WEA's choice and at WEA's expense, "when and as often as it is reasonable with respect to any claim for benefits." (Pl.'s PFOF (dkt. #15) ¶ 17.)

### B. Jones' Illness

Plaintiff Stephanie Jones worked for WEA as a customer service representative from 2005 until her employment was terminated in 2010. In June of 2009, she began having severe gallbladder symptoms, including daily vomiting and pain, and she was diagnosed

---

[3] Citations to the administrative record will hereafter be designated AR.

3

with gallbladder disease.   By June 7, she was in the emergency room due to worsening symptoms, and by June 11, Dr. Kenneth Kudsk had decided to perform gallbladder surgery on her.   He recommended that surgery be performed on July 22, 2009, but it was delayed when Jones was diagnosed with MRSA.[4]

Jones' last day of work was August 6, 2009.   On that day, she was seen at the ER due to blood in her stool.   She went to the ER again on August 25, reporting breathing problems and right upper quadrant pain, and received a diagnosis of anxiety and gastritis.

Jones scheduled gallbladder surgery with Dr. Kudsk for August 19, 2009.   Following numerous cancellations, the surgery was rescheduled for September 30.   Two weeks before the surgery, on September 16, she was seen in the emergency room, complaining of difficulty breathing and an inability to keep food or liquids down.   On September 18, she suffered a gallbladder attack and went to the emergency room.   She was admitted to the hospital, and the next day, September 19, Dr. Mark Meier performed a successful laparoscopic gallbladder removal.   There were no complications, and a subsequent biopsy was consistent with mild gallbladder disease.   Dr. Kudsk indicated that the normal recovery for a laparoscopic gallbladder removal was a "couple of weeks."

On October 14, 2009, Jones suffered some symptoms, according to her medical records.   Dr. Foss later diagnosed those symptoms as related to mild, nonspecific colitis.   He prescribed a medication to treat the condition and scheduled a follow-up appointment for November 10, 2009.

---

[4] MRSA, or Methicillin-resistant Staphylococcus aureus, is an infectioin caused by a strain of staph bacteria resistant to the antibiotics commonly used to treat ordinary staph infections.   Mayo Clinic Staff, *MRSA infection*, www.mayoclinic.org/diseases-conditions/mrsa/basics/definition/con-20024479 (last visited Oct. 3, 2014).

### C. Jones' LTD Requests and WEA's Review

On September 1, 2009, ten days before her surgery took place, Jones submitted a claim form for LTD benefits, alleging disability due to "Anxiety, gall bladder, MRSA." On October 5, 2009, she submitted a second claim form for LTD benefits, this time alleging disability due to "Severe depression, SAD, PTSD, Anxiety/panic, Withdrawal from meds, Fibro." On October 26, 2009, she submitted a third claim form for LTD benefits, alleging disability due to "Severe depression, SAD, PTSD, Anxiety/panic, Withdrawal from meds, Fibro, Colitis." She provided several claim forms in support, including those completed by Dr. Kudsk, Dr. Meier, Dr. Moore, and Dr. Marek Hann, who was Jones' psychiatrist. Dr. Kudsk's Physician Certification forms both stated that Jones was temporarily unable to work beginning August 6, 2009. (*See* AR at Exs. 7, 8.) Dr. Meier also indicated that Jones had certain temporary "functional limitations" beginning on August 6, 2009. While defendant purports to dispute this fact, the record includes a Long Term Disability Claim Form containing this information, which Meier signed on October 20, 2009. (*See id.* at Ex. 9.) Dr. Moore's form indicated that Jones' limitations began on August 6, 2009; Moore expected recovery by January 26, 2010; and he had seen Jones for a "1 time visit" on October 26, 2009. (*Id.* at Ex. 10.) The form from Dr. Hann certifies her disability from an "unknown" date until January 28, 2010, and states that Jones suffered from rectal bleeding, bloody diarrhea, weakness, exhaustion and dizziness. (*Id.* at Ex. 11.) The claim form indicates that Jones' records were "sent separately," but those records are not part of the administrative record in this case.[5]

---

[5] From the record here, the court remains uncertain if they were sent.

In evaluating Jones' claim, WEA requested from the care providers she identified her medical records from June 1 to November 10, 2009.  WEA Disability Manager Reed, who had been tasked with reviewing Jones' claim for LTD benefits, provided the records and forms to WEA's Medical Director, Dr. Kenneth Robbins.   Dr. Robbins submitted a statement to Reed on October 21, 2009, which read:

> As you requested, I carefully reviewed the medical records regarding Ms. Jones.  Your summary memo is excellent, so I will not repeat its contents.  The notes from Dr. Hann do not document severe symptoms that would suggest Ms. Jones is unable to work on the basis of a psychiatric disorder. Furthermore, they do not document significant mental status abnormalities or a functional impairment.  On that basis, I can not support that she is disabled as a result of a psychiatric illness.  I would be happy to review any further records that become available.

(AR at Ex. 13.)

Reed also provided the medical records and forms to Dr. Daniel Icenogle, WEA's medical consultant, for his review.  On November 6, 2009, Icenogle submitted a statement to Reed.  The beginning of the statement summarized his findings as:

> Ms. Jones has alleged disability since August 6, 2009, due to a variety of issues, including anxiety, gall bladder disease, MRSA, and colitis.  In my review of the medical records from August 6, 2009, until her admission to Divine Savior in September 2009 for her to undergo a cholecystectomy, I find no basis for a finding that she was consistently unable to perform the essential and material tasks of her employment as the result of any medical condition. . . .

Icenogle's statement noted that as of September 19, 2009, however, Jones had undergone a cholecystectomy by Dr. Mark Meier and was disabled for "the usual period following such a procedure."  Additionally, it indicated that Meier had found colitis and referred Jones to Dr. John Foss, a gastroenterologist, who agreed, although "the specific diagnosis was not clear."

6

Dr. Icenogle then discussed his conversations with Jones' treating physicians, beginning with Dr. Meier:

> Dr. Meier does not plan on seeing Ms. Jones again.  He stated that the cholecystectomy went well and that she has no complications or remaining issues from it.  As for the colitis, he does not treat that disorder and so referred her to Dr. Foss.  He would have no comments or additions to whatever therapeutic and prognostic decisions Dr. Foss would make.  He also stated that he filled out Ms. Jones' disability paperwork poorly, in his words, and that he would defer any disability determinations beyond the cholocystectomy to Dr. Foss.

Next, Dr. Icenogle reviewed the statement of Dr. Mark Moore, an occupational medicine physician whom Jones had seen once, on October 26, 2009, at the referral of her psychiatrist:

> Dr. Moore stated that he does not feel that he is in the best position to make a disability determination.  Echoing what he wrote in his office dictation of October 26, 2009, he feels she *may* well be disabled but it may not be due primarily to physical conditions but that her psychiatric issues may play a greater role.  He does feel that the colitis presents at most a temporary disability until it is brought under control.  Finally, he stated he will not be playing a further role in her care.

Finally, Dr. Icenogle discussed the statement of Dr. Foss:

> As for Dr. Foss, he stated he was unaware of having provided any disability statement providing a length of disability beyond the follow-up visit set for November 10.  He did feel that she was disabled due to the colitis at the present time but that it was not his opinion that her disability, based on present information, would definitely extend to January 2010 as noted on the FMLA paperwork with what is purported to be his signature.

Icenogle's statement concluded:

> At this point, based on my review of the records and my conversations with the various physicians above, it is my opinion, to a reasonable degree of medical certainty, that Ms. Jones was disabled as of September 18, 2009, through her

7

follow-up visit with Dr. Foss to be done on November 10, 2009. Any disability determination following November 10, 2009, will depend on Dr. Foss' evaluation as of that date.

### D. Partial Grant and Partial Denial

On November 10, 2009, Reed informed Jones by letter that WEA had partially denied and partially granted Jones' claim for LTD benefits. The letter outlined Jones' relevant medical history, as well as WEA's rationale for granting and denying benefits. Specifically, it explained that although Jones had stopped working as of August 6, 2009, nothing in her records suggested that her decision to stop working was based on actual medical advice. It also explained that WEA had approved her claim from September 18 to November 10, 2009, based on her gallbladder surgery, the recovery and her colitis.

Finally, the letter addressed her mental health disability claims:

Although you have indicated that you suffer from a number of psychiatric disorders and you characterize them as severe, the medical evidence does not document severity that would be expected to prevent you from working. These conditions are longstanding, and are generally addressed through regular counseling and medical management at intervals that are appropriate for treatment, but not indicative of disability. In addition, you have demonstrated repeatedly that you are capable of such goal-directed activity as marshaling the medical information in connection with your claim.

. . . As indicated in the first page of this letter of explanation, a statement from a physician without accompanying objective, contemporaneous medical evidence is not sufficient proof of disability. This applies in particular to statements from doctors who did not evaluate you at the time of alleged disability, or who provide a blanket work excuse for a significant period into the future. The objective medical evidence must strongly support such statements and the evidence we reviewed does not. There are numerous discrepancies between reported symptoms and functional limitations, and such objective measures as laboratory results, vital measurements, and direct observations.

8

. . . If you have additional medical or psychiatric information detailing the specific functional limitations that have prevented you from performing your job duties from August 6, 2009, to September 18, 2009, please submit this to us by November 25, 2009, for our review.

### E.  WEA's Evaluation of Ongoing Disability

On December 1, 2009, WEA received the clinic notes reflecting Jones' follow-up appointment of November 10.  The notes described continuing symptoms of unclear etiology; Dr. Foss felt that Jones' response to another four or five days of medication would provide some answers.

The next day, Reed wrote a letter requesting that Jones undergo an independent medical examination ("IME") to provide additional, objective information with which WEA could evaluate her claim.  Reed informed Jones that although WEA had not found her to be disabled beyond November 10, 2009, it would issue her continued LTD benefits through November 30, 2009, in recognition of the fact scheduling the IME would take time. Additionally, Reed indicated that Robbins had again contacted Hann for more information about Jones' mental health condition.  In response to Robbins' inquiry, Hann stated he did not feel in a position to evaluate Jones' disability status.   Hann also stated that he understood Jones' disability to be related to mold exposure, and said he had nothing further to add.   Based on Hann's response, Reed informed Jones that WEA was requesting additional medical records, including physical therapy records and an evaluation for mold exposure that had been conducted in October of 2009.[6]  Reed further informed Jones that WEA had asked Robbins and Icenogle to contact the remainder of her care providers, and

---

[6] WEA had not initially requested the mold exposure evaluation because Jones indicated it was irrelevant to her claim of disability.

that each of these other providers declined to provide an opinion concerning disability, deferring instead to the providers with whom WEA had already communicated.

The psychiatric IME was originally scheduled for December 15, 2009, with Dr. Erick Knudson, a forensic psychiatry consultant.   Jones arrived 30 minutes late for the appointment and was unwilling to participate unless the evaluation was recorded and she was given a copy.  As a result, Knudson concluded that he was unable to perform the IME on that date.   The IME was then rescheduled and performed on December 22, 2009. During the evaluation, Knudson reviewed Jones' medical records and conducted a psychiatric evaluation lasting approximately three hours and 45 minutes.  Dr. Knudson also attempted to administer an MMPI test during the IME, but Jones declined to answer a substantial number of questions, leaving Knudson unable to determine a valid psychiatric profile.

On January 3, 2010, Knudson issued his report based on the December 22 evaluation.  The report contained the following findings:

> Ms. Jones appeared as a healthy woman in her 30's.  She arrived 15 minutes late for the appointment.   She was polite and cooperative with the examination.  She made good eye contact. She sat still.  She did not show signs of physical restlessness or agitation.   Ms. Jones did not appear to experience physical discomfort during the assessment. . . .
>
> She reported problems with depression and anxiety, but neither was apparent to me during the assessment. . . .
>
> Ms. Jones appeared to have at least average intelligence.  She showed good attention to detail that was sustained throughout the examination.  She did not show signs of physical or mental fatigue.  She denied urges to hurt herself or others.  She was alert and oriented to person, place, time, and the circumstances of the examination. . . .

> I do not believe that Ms. Jones suffers from any psychiatric condition that functionally limits her ability to work as a customer service representative.   While she reports some symptoms of anxiety, I did not find any objective medical evidence that her anxiety was likely to interfere with job duties. . . .
>
> Ms. Jones is currently receiving outpatient psychiatric treatment. . . . I believe she is receiving appropriate treatment at this time.

Reed provided the IME report to Dr. Robbins for his review.

On January 19, 2010, Dr. Robbins gave a follow up statement regarding Jones' condition based on his review of her medical records, two discussions with Dr. Hann and review of the IME report completed by Dr. Knudson.   The remainder of his statement indicated in relevant part that:

> The medical records do not make clear specific psychiatric symptoms that are or have been disabling Ms. Jones, and Dr. Hann has said he supported her disability based on Dr. Moore's evaluation, not based on his understanding of her psychiatric condition.   He felt Dr. Moore's report suggested her medical, not her psychiatric, symptoms were disabling.
>
> Dr. Knudson's evaluation based on his review of the records and two separate interviews totaling about four and a half hours was that Ms. Jones does not have disabling psychiatric condition.   I see nothing in the medical records or in his evaluation that suggests his opinion is not valid.
>
> I cannot support that Ms. Jones has had a psychiatric disability at any time between November 10, 2009 and the present.

Relying on Dr. Robbins' ultimate conclusions, Reed informed Jones by letter dated January 20, 2010, that WEA had finished evaluating her claim for LTD benefits and found that she had not established any disability beyond November 10, 2009.   Specifically, Reed noted that colitis did not necessarily cause functional limitations preventing work, especially sedentary work, and that Jones' symptoms appeared to respond to standard treatment.   She

also wrote that from a psychiatric standpoint, Jones regularly saw a therapist as needed, and that Jones had successfully worked for years despite her various psychiatric diagnoses. She concluded the letter by providing Jones with information regarding her right to appeal, including instructions to cite the "specific provisions" of the LTD policy she believed substantiated her claim.

### F.  Jones' Appeal

By March 10, 2010, Jones had been released to full-time work by Dr. Mark Timmerman, Jones' primary care provider, and by Stefanie Knoll, Jones' mental health therapist. On April 13, 2010, Jones filed an appeal form WEA's finding of no disability beyond November 10, 2009. The appeal was initially scheduled for hearing before the WEA Appeal Committee on June 22, 2010, but Jones' attorney at the time, Jeff Scott Olson, requested postponement during the hearing so he could gather additional materials to support her claim. Over the next seven months, he faxed WEA several documents, including medical records that reflected just two office visits, both with Dr. Foss, after November 30, 2009. The records also reflected that, on December 7, 2009, Dr. Foss had again diagnosed Jones with mild, nonspecific colitis and irritable bowel syndrome. He prescribed Jones a low-dose antidepressant but did not recommend further evaluation, nor did he suggest she was unable to work due to either of her diagnosed conditions.

Attorney Olson also provided the Appeal Committee two forms, completed by Dr. Timmerman and Ms. Knoll, both of which had also been provided to the Wisconsin Department of Workforce Development ("DWD") for unemployment benefit purposes. Dr. Timmerman's DWD form, dated May 26, 2010, stated that Jones was "often unable to

perform her work duties" between August 5, 2009 and March 10, 2010, but was able to return to work without restrictions as of March 10.  Timmerman did not provide additional medical evidence in support of that conclusion, though he did broadly reference "medical treatment" Jones received during that time period.[7]  The form Ms. Knoll completed also stated that Jones was able to return to work without restrictions as of March 10, 2010.  Knoll did not, however, provide any evidence supporting her conclusion that Jones was unable to work before March 10, 2010.

Drs. Robbins and Icenogle reviewed the additional information as it was submitted and provided WEA with updated opinions regarding Jones' claims of physical and mental disability.  Dr. Robbins also stated that he had reviewed the new medical records, a letter from Attorney Olson and a letter from Ms. Knoll, dated January 31, 2011.  He further indicated that the "new information [did] not change [his] opinion that Ms. Jones is not disabled as a result of a psychiatric condition" and that he did not see evidence that she had any "disabling psychiatric symptoms at any time between November 2009 and the present."  Dr. Icenogle provided his new statement on February 10, 2011, indicating that he had reviewed the additional records and concluding that:

> Having reviewed that material, it is my opinion, to a reasonable degree of medical certainty, that Ms. Jones was not disabled at any time after November 10, 2009, in that there is no documentation of any medical disorder or condition that consistently prevented her from performing the essential and material tasks of her employment.  In particular, while there are various times Ms. Jones subjectively reports severe symptoms, such as in telephone calls to her physicians, there is little or no documentation of abnormal physical examinations or other findings concurrent to those reports.  In fact, for the greatest

---

[7] Because the records from Dr. Timmerman's office were dated June 2009, WEA had no evidence that Timmerman had seen Jones between June of 2009 and March of 2010.

part, her physicians appear satisfied with the control of her disorders. While I have no doubt Ms. Jones would have symptoms requiring she not work on a particular day, there is no basis on which to find a consistent presence of a condition preventing her from working beyond these occasions.

Based on Robbins and Icenogle's new evaluations, Reed wrote a letter dated February 10, 2011, affirming WEA's decision to deny Jones LTD benefits. Reed explained that the new information provided had not changed WEA's conclusion that Jones' medical conditions permitted her to perform the material and substantial duties of her occupation as a customer service representative after November 10, 2009.[8] Reed's letter further explained that Dr. Knoll's statement was neither contemporaneous nor objective, in that Knoll was simply reporting information relayed to her, and was also inconsistent with objective and contemporaneous information gleaned from medical records and direct evaluations during the initial adjudication of Knoll's claim.

WEA then scheduled a March 11, 2011, hearing for Jones before the WEA Appeal Committee. Jones' attorney canceled that hearing after receiving the letter of February 10, 2011. WEA received no further communications from him until February of 2012, when he informed WEA that he no longer represented Jones.

## G. Jones' Second Appeal

WEA received a letter dated July 3, 2012, from attorney Douglas Phebus, indicating that Jones was renewing her claim for LTD benefits and requesting a hearing before the WEA Appeal Committee. In support of the second appeal, Phebus submitted only a single

---

[8] Defendant's proposed finding of fact 75 lists the operative date as "November 10, 2012," but this appears to be an obvious error. The letter in question refers to "November 2009" as the operative date, although the second to last paragraph refers (again, apparently erroneously) to "November 10, 2010." (*See* Administrative Record (dkt. #10) 78-80.)

14

form, which Dr. Moore had completed on June 18, 2012.  That form indicates that it was completed for purposes of a Columbia County child support matter and states that Jones was "permanently and totally disabled as of October 26, 2009," due to "Crohn's, PTSD, Depression, Anxiety, Right Rotator Cuff."  It contained no explanation as to why Dr. Moore had changed his November 6, 2009, opinion that he could not say whether Jones was disabled.

Karen Tweten, a WEA Disability Analyst, assembled an appeal file for the Appeal Committee's review, which included Tweten's own analysis of Jones' claim.  Tweten noted that the previous records from Dr. Moore did not provide sufficient evidence of Jones' disability, and no supporting records accompanied Attorney Phebus's submission.  There was also no documentation of any evaluation or treatment by Dr. Moore after October 26, 2009.  Without "accompanying objective medical and/or psychiatric evidence," Tweten concluded that Dr. Moore's statement alone was not sufficient to substantiate claims of disability under the LTD Policy.  Moore's statement that Jones had been totally disabled since 2009 also conflicted with earlier statements from Drs. Timmerman and Knoll, which indicated that Jones could return to work without restrictions as of March 10, 2010. Without objective medical evidence, Tweten recommended that the Appeal Committee sustain the original decision denying Jones LTD benefits.

In a letter dated August 6, 2012, WEA provided Attorney Phebus with a copy of the appeal file and Tweten's analysis.  This file apparently did *not* include the medical records themselves, although it included the LTD claim forms, the memoranda from Drs. Robbins and Icenogle, the letters that Attorney Olson had faxed during the first appeal and other letters.  (*See* AR at pp. 16-17 (exhibit summary).  Overall, Olson provided a total of 65

15

pages of medical records that were not themselves given to the Appeal Committee, although the parties dispute whether the Committee could be said to have "considered" them insofar as it had Drs. Robbins and Icenogle review them before rendering their opinions. The parties also dispute whether Tweten identified records that were not provided to the Committee. WEA invited Jones to submit a written statement in support of her appeal before the hearing, but she chose not do so.

On August 20, 2012, the WEA Appeal Committee met to review and decide the appeal that Phebus had filed on Jones' behalf. Jones appeared in person with her attorney, Mr. Phebus. Tweten presented her analysis to the Appeal Committee, highlighting her opinion that Jones had failed to provide objective medical evidence to support her alleged inability to work after November 10, 2009. Phebus then questioned Jones before the Appeal Committee, and Jones made statements regarding her alleged medical conditions and symptoms. The Appeal Committee likewise questioned Jones. Phebus presented no additional support for Jones' eligibility apart from the statements Jones and he made, although he apparently offered to provide additional, unidentified records during the hearing. The next day, the Appeal Committee issued a written determination denying Jones' appeal. (*See* dkt. #10-3.)


OPINION

Jones challenges WEA's decision to deny her LTD benefits under the Plan. When an ERISA benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits, courts must review the decision under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Weatherall v.*

*Reliastar Life Ins. Co.*, 398 F. Supp. 2d 918, 922 (W.D. Wis. 2005). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of [an ERISA fiduciary]." *Reilly v. Blue Cross & Blue Shield United of Wis.*, 846 F.2d 416, 420 (7th Cir. 1988) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (alterations in original)). While the reviewing court owes the administrator significant deference, the Seventh Circuit has nevertheless cautioned that "[r]eview under this standard is not a rubber stamp," *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010), and "deference need not be abject," *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996).

The court will, therefore, uphold WEA's decision "if (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass important aspects of the problem." *Militello v. Cent. States, Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 686 (7th Cir. 2004) (internal quotation marks and citations omitted). Unfortunately for Jones, all three components are satisfied on this record.

## I. Scope of Jones' Narrows Claims

In her amended complaint, Jones alleges that she has been continually disabled since August 6, 2009, and is accordingly entitled to benefits from that date "to the present and continuing." (*See* Am. Compl. (dkt. #11) ¶¶ 4, 6, 10.) However, in her brief in response to defendant's motion for summary judgment, Jones essentially concedes that she is not entitled to benefits on a continuing basis. Rather, Jones now requests only that the court

order WEA to pay benefits for two distinct time periods: (1) August 6, 2009 through September 18, 2009; and (2) November 30, 2009 through March 10, 2010.[9]  (*See* Pl.'s Br. Opp'n Summ. J. (dkt. #20) 10.)  In doing so, Jones also concedes that she was no longer disabled as of March 10, 2010, stating that she was not eligible for Social Security Disability Insurance benefits "because her doctors released her without restrictions as of March 10, 2010." (*Id.* at 9.)

In light of these concessions, therefore, the court concludes at the outset that WEA's decision to deny Jones benefits after March 10, 2010 is not arbitrary and capricious. Accordingly, WEA is entitled to summary judgment on Jones' original claim to ongoing benefits.

## II. General Disregard of Medical Records

As for Jones' remaining claim, she generally argues that WEA's decision was arbitrary and capricious because it disregarded her medical records in evaluating her claim but does not take issue with WEA's original denials of her benefit claims.  Specifically, Jones contends, and WEA admits, that it did not give Jones' medical records themselves to the Appeal Committee, although WEA also points out that its medical experts reviewed all of those records in rendering their opinions, and that the Appeal Committee in turn reviewed those opinions.

Certainly, "the fact that an administrator blatantly disregards an applicant's submissions can be evidence of arbitrary and capricious action," *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 463 (7th Cir. 2001), although it is not clear whether this

---

[9] As noted above, WEA approved a period of disability and paid Jones LTD benefits from September 18, 2009 until November 30, 2009.  (*See* Def.'s Resp. PPFOF (dkt. #26) ¶ 19.)

standard applies in the context of an appeal, as well as during the initial determination. Leaving that question aside, the larger problem with Jones' argument is that neither WEA nor the Appeal Committee "blatantly disregarded" her submissions.  On the contrary, both considered everything she provided.  To the extent that the medical records were relevant, WEA and its experts reviewed them all, and summaries of those records were given to the Appeal Committee.  As noted in Tweten's memorandum, Reed also reviewed the 65 pages of records that Attorney Olson originally submitted to WEA and requested that the medical experts evaluate that information.  Robbins and Icenogle both did so and opined that the new records did not alter their previous opinion.   (AR at Ex. 25, 26.)   Tweten's memorandum to the Appeal Committee also summarizes the medical records themselves, as does Olson's transmittal letter, such that the general contents, if not the records themselves, certainly were part of the administrative record before the Committee.  The court, therefore, agrees with WEA that this is not that hypothetical case where "the application was thrown in the trash rather than evaluated on the merits."  *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 982 (7th Cir. 1999); *see also Hess*, 274 F.3d at 462-63 ("The fact that the examiner did not bother to read pertinent evidence actually before him cannot shield Hartford's decision from review.").

Perhaps this would be a different case if Jones could identify specific, material information in the records that the Appeal Committee did not actually have -- for instance, if she had submitted test results supporting her claimed symptoms, but the Appeal Committee was never given those results.  But here, although Jones challenges WEA's decision not to provide some medical records themselves in their original form, she in unable to point to any *information* within those records that WEA did not consider.  For

19

example, Dr. Olson's transmittal letter discusses her reports of daily vomiting and rectal bleeding in March of 2010.  (*See* AR at Ex. 23.)  The record reflects in numerous other places Jones' reports of rectal bleeding.  (*See, e.g.*, *id.* at Ex. 27 (February 10, 2011 denial letter discussing reports of rectal bleeding).)  And Tweten herself summarized the contents of the "numerous records dating back to June 4, 2009" in her memorandum for the Appeal Committee.  (*See id.*at pp. 5-6.)

Finally, as WEA points out, Jones has presented no case law suggesting that an administrator must provide every document it considered to the Appeal Committee.  Even if it *were* a better practice for WEA to provide the original records themselves for the Appeal Committee's consideration (particularly given the cursory opinions rendered by Drs. Robbins and Icenogle (*see id.* at Exs. 25-26)), without some evidence that the WEA Appeal Committee was *denied information* relevant to Jones's claim, it does not make sense to find the Committee's decision arbitrary and capricious based solely on the absence of the paper records themselves, especially when there is no evidence that Jones ever pointed the Committee to something  in those "missing" records material to its decisionmaking. Accordingly, the court rejects this challenge to the benefit determination.

## III. Specific Disability Claims

Having discussed Jones's general challenge, the court moves on to consider her arguments with respect to particular periods of disability.

### A. August 6, 2009 through September 18, 2009

First, Jones argues that the denial of benefits from August 6th -- her last active day at work -- until September 18th -- the day before her emergency surgery -- was arbitrary and

capricious.  Jones argues that WEA relied solely on Dr. Icenogle's report in denying her benefits during that time and that Icenogle "completely ignored the opinions of Dr. Kudsk, he misstated the opinions of Dr. Moore, and he put aside the opinion of Dr. Meier[.]" (Pl.'s Br. Opp'n (dkt. #20) 7.)   Specifically, she points out that: (1) Meier certified the August 6, 2009, to September 19, 2009, period; (2) Moore also certified Jones' disability beginning on August 6, 2009; and (3) Icenogle did not speak to Kudsk at all.  In Jones' view, these failings render Dr. Icenogle's report inherently unreliable, making WEA's reliance on it arbitrary and capricious.

Even before the court reaches her objections to Icenogle's report, however, Jones faces a hurdle that she cannot overcome:  it is not WEA's burden to prove Jones was *ineligible* for benefits; it is Jones's burden to prove she was *eligible* under the terms of the Policy.  (*See* AR at Ex. 18 ("You are responsible for providing us with proof, which we deem sufficient, that you have suffered a Covered Loss (a loss of Covered Salary because of Disability).".)  Under the Policy, Jones needed to submit more than the declaration of a physician; she needed to submit substantiating, objective medical evidence.  (*Id.*)  On this record, Jones simply did not provide the objective evidence substantiating her claimed disabilities for this period.

Admittedly, Jones was seen by various doctors on multiple occasions immediately before and during the period of her claimed disability, reporting symptoms like "right upper quadrant abdominal pain" on August 18; "breathing problems and right upper quadrant abdominal pain" and "diarrhea" on August 25; "difficulty breathing, and complete inability to keep food or liquid down for the past two days" and bloody stool on September 16.  (*See* AR at Ex. 1.)  But these visits resulted in normal test results that were, apparently,

21

inconsistent with her complaints: on August 18, Jones's "physical exam, mental status exam, and laboratory tests were all within normal limits"; on August 25, her "physical exam was within normal limits and laboratory results were not indicative of serious health concerns" and she was diagnosed with gastritis and anxiety; and on September 16, she was diagnosed with hyperventilation syndrome, all her symptoms "responded well to Benadryl," and there was "no evidence of dehydration or electrolyte imbalance consistent with severe or frequent vomiting." (*Id.*) Thus, most of the symptoms on which Jones relies to argue she could not have worked during this period were apparently self-reported and were not borne out by the kind of objective medical evidence the Policy required. In light of these facts, the court concludes that Icenogle's determination that "there is no documentation of an ongoing medical issue or series of issues that would consistently have prevented her from performing her job" appears wholly reasonable. (*Id.* at Ex. 14.)

Furthermore, the court does not believe Dr. Icenogle's rejection of the three physician certifications, which forms the bulk of Jones's challenge, can be deemed arbitrary and capricious. In resolving a claim for long-term disability benefits under ERISA, a defendant must, of course, "address any reliable, contrary evidence presented by the claimant." *Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 397 (7th Cir. 2009). However, WEA did adequately address each of the three certifications of disability in its decision. First, with respect to Meier's opinion, Icenogle noted accurately in his report that Meier did not even see Jones until September 18, 2009, the end of the claimed period of disability. Meier does not explain how he was able to relate her symptoms back to August 6, 2009. The form he filled out notes only that August 6th was Jones's first ER visit for colitis, while the contemporaneous medical record indicates that during her August 6th visit,

Jones:  (1) denied abdominal pain; (2) reported minor bleeding consistent with hemorrhoids and mild nausea; and (3) tested within normal limits in her physical exam and lab tests. (*See* AR, at pp. 5-6.)  The "functional limitations" Meier lists likewise relate to Jones' state at the time Meier filled out the form on October 20, 2009.  Specifically, Meier states that Jones is "unable to eat well currently" and that "abdominal pain and rectal bleeding continue – leads to generalized dysfunction." (*Id.* at Ex. 9.)  Even overlooking the temporal problems, the record shows Dr. Icenogle contacted Meier, who stated he had filled out Jones's disability paperwork "poorly" and would defer any disability determinations beyond the surgery he had performed to Dr. Foss.  Under these circumstances, it was not arbitrary and capricious to lend little weight to Dr. Meier's certification.

Similarly, with respect to Dr. Moore's certification, it was not unreasonable for Dr. Icenogle to have rejected it given that Moore saw Jones for the first and only time on October 26, 2009 -- five weeks *after* the claimed period of disability.  (AR at Ex. 10.) Moore's own notes also state that he did feel that Jones was disabled as of October 26, but they fail to explain how he was able to relate her symptoms back to the claimed period.  (*Id.* at p. 64.)  Even were the court to presume that Jones' condition remained the same for purposes of determining her functional limitations between September 18 and October 26, WEA was permitted to give Moore's opinion little weight.  Indeed, not only do his notes state that "likely the treating physician is in a better role to call disability decisions than myself since I really do not know her that well" (*id.*), but Moore apparently reiterated that he was not "in the best position to make a disability determination" when Icenogle contacted him later.

Finally, WEA was justified in allotting little weight to Dr. Kudsk's certification.  The first claim form he filled out lists only "cholethiasis" as a symptom,[10] and in the section requesting "functional limitations," it states only "no work 8/6/09-10/30/09."  (AR at Ex. 7.)  The second claim form he filled out lists *no* current symptoms, and in the section requesting "functional limitations," states only "no work 8/6/09 to 9/21/09."  (*See id.* at Ex. 8.)  WEA's LTD Policy specifically states that a physician's declaration of disability is insufficient to substantiate a disability without accompanying medical evidence.  (*Id.* at Ex. 18.)  Accordingly, it was not arbitrary and capricious for WEA to afford Kudsk's perfunctory, unsupported certification little weight in its overall analysis.

### B.  November 30, 2009 through March 10, 2010

Jones also argues that the denial of benefits from November 30, 2009, through March 10, 2010, was arbitrary and capricious.  In support, she points primarily to the January 31, 2011 report of Stacy Knoll, in which Ms. Knoll notes that:  (1) from August 2009 through March 2010, Jones consistently reported anxiety attacks that made it almost impossible to work; and (2) Jones' health concerns resulted in frequent trips to the emergency room.  Knoll also indicated that Jones' physical symptoms frequently increased her depression and anxiety.  Jones argues that Knoll's report demonstrates that her physical and mental symptoms *in combination* were "troublesome."  (Pl.'s Br. Opp'n (dkt. #20) 8.)  Although Jones appears to concede that "[t]aken individually they would not disqualify [her]," she also contends that only a vocational expert could truly have sorted out how the interplay between her various ailments would affect her employability.  (*Id.*)

---

[10] This appears to be a misspelling of "cholelithiasis," meaning the presence of gallstones.  *Dorland's Illustrated Medical Dictionary* 349 (32d ed. 2012).

"Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). At the same time, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* Thus, the mere fact that Knoll's statement indicates that Jones reported symptoms making it "almost impossible [for her] to leave the house to go to work" does not necessarily render WEA's determination that she *could* in fact work arbitrary and capricious, so long as WEA provided a reasoned explanation for its conclusion and did not arbitrarily refuse to credit Knoll's statement in coming to that conclusion.

The court agrees with WEA that its rejection of Knoll's report was reasonable. During the initial adjudication of Jones's claim, WEA, through Dr. Knudson, conducted its own independent medical exam to determine whether Jones had disabling psychiatric conditions. (AR at Ex. 12.) Knudson performed two psychiatric examinations -- one lasting 45 minutes, another lasting 3 hours 45 minutes -- and found no objective medical evidence that Jones's anxiety was likely to interfere with her job duties, nor did he observe problems with depression or anxiety during the meeting. As Reed indicated after Jones' first appeal, the Knoll letter simply related Jones's own reports of her symptoms long after the actual period of disability and was inconsistent with "direct evaluation by medical professionals during the initial adjudication of [her] claim." (AR at Ex. 27.) "Most of the time, physicians accept at face value what patients tell them about their symptoms; but insurers . . . . must consider the possibility that applicants are exaggerating in an effort to win benefits

25

(or are sincere hypochondriacs not at serious medical risk)." *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 607 (7th Cir. 2007) (quoting *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2009) (alteration in original)). It is, therefore, not arbitrary and capricious for WEA to credit Dr. Knudson's evaluation, which took place during the period at issue and was based on his personal observations of Jones, over Knoll's letter, which was written months after the claimed period and simply reports Jones' after-the-fact description of her symptoms.

Furthermore, based on his review of the letter from Knoll, review of the IME and conversation with Dr. Hann, Dr. Robbins opined that Knoll's letter was inconsistent and could not support a finding of disability. (*Id.* at Ex. 25.) While again, his letter is terse and offers little in the way of analysis, it provides an additional basis for WEA's ultimate decision to credit Dr. Knudson's evaluation over Knoll's.

Having rejected the first premise of Jones's argument, she cannot succeed on the second. It would make little sense to hold that WEA was required to hire a vocational expert to address an "interplay" of symptoms that Jones failed to establish she suffered in the first place. Given that Jones carries the burden of proof, the court is disinclined to credit her unsupported assertion that "*only* a vocational expert could truly sort out" how her symptoms would affect her employability. (Pl.'s Br. Opp'n (dkt. #20) 8.) Absent any legal support for the proposition that a vocational expert is required in such cases, an explanation why Drs. Icenogle and Robbins were unqualified to review her records and opine on her ability to work, or evidence that such an expert would have concluded differently, WEA's decision stands.[11]

---

[11] WEA also argued that Jones's failure to apply for Social Security benefits rendered her ineligible for long-term disability. Given that Jones no longer seeks ongoing benefits, WEA has withdrawn

ORDER

IT IS ORDERED that defendant WEA Insurance Corporation's motion for summary judgment (dkt. #14) is GRANTED.  The clerk of court is directed to enter judgment and close this case.

Entered this 6th day of October, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

_____

that argument as moot, and the court need not address it further.